**FROST NATIONAL BANK OF SAN ANTONIO, Independent Executor and Trustee of the Estate of Louise M. Cozby, Deceased, Petitioner,**

v.

**Karolen NEWTON and Louise Purvis et al., Respondents.**

No. B–6453.

Supreme Court of Texas.

June 22, 1977.

Rehearing Denied July 20, 1977.

Joe Meador, James E. Aderhold, San Antonio, for petitioner.

Barry Snell, Van G. Hilley, San Antonio, for respondents.

STEAKLEY, Justice.

The Frost National Bank of San Antonio, Independent Executor of the will of Louise M. Cozby, deceased, and Trustee of the trust estate created in the will, brought this declaratory judgment suit to determine whether the trust estate created by Mrs. Cozby in her will should be terminated. The district court rendered a judgment terminating the trust, and the Court of Civil Appeals affirmed that judgment. *See Frost National Bank of San Antonio v. Newton,* 543 S.W.2d 196 (Tex.Civ.App.—Waco 1976). We reverse the judgments of the lower courts.

The will in question was drafted by Rexford Cozby, an attorney and the husband of the testatrix. Paragraph One appointed the Frost National Bank Independent Executor of the estate, Paragraph Two provided for certain specific bequests, and Paragraphs Three and Four provided for the creation and administration of the trust estate. Pertinent to the resolution of this case are the following provisions:

### PARAGRAPH NUMBER THREE.
### TRUST ESTATE:

I hereby give, devise· and bequeath unto the FROST NATIONAL BANK OF SAN ANTONIO, AS TRUSTEE, in trust for the following beneficiaries and for the uses and purposes hereinafter set forth, all of my right, title and ownership in and to all of the residue and remainder of my property and estate, not otherwise hereinabove disposed of, . . . all of which property will be hereinafter referred to as the "TRUST ESTATE", and is to be held, managed, controlled and disposed of by said Bank as Trustee, as hereinafter provided.

The said Trust shall become effective as soon as my Independent Executor shall have completed the administration, or sooner if the said Bank as Executor or Trustee shall so elect, and shall continue in force and effect during the remainder of the lifetime of the last survivor of the following named three beneficiaries, viz: Rexford S. Cozby, Karolen Newton and Louise Purvis, and shall terminate upon the date of death of the last survivor of said three last named beneficiaries. Provided, however, that said Trustee shall have the right, at its option, to sooner terminate said Trust in the event the income from the trust property shall hereafter cease to be sufficient in amount to justify the further continuance of such Trust, in the opinion of the Trustee.

The said Frost National Bank of San Antonio shall not be required to give any bond as such Trustee, and shall act free from the control of any Court, and for the services as such Trustee and as such Independent Executor said Bank shall be entitled to receive and retain, out of the Trust funds, the usual and customary compensation charged by said Bank in like cases. . . .

During the entire existence of the term of said Trust, the said Trustee is directed to pay, out of said Trust funds, to or for the use and benefit of the following named respective beneficiaries the following periodical payments:

One-third (⅓) of the net income from said Trust Estate shall be by said Trustee paid to my husband, Rexford S. Cozby, during the remainder of his lifetime; and the remaining two-thirds (⅔) of said net income from said Trust Estate (plus such portions of the principal thereof as the Trustee may deem necessary) shall be applied to the payment of the expenses incident to: (a)—The support and education through high school and college of my great-nephew, Warren S. Wilkinson, Jr., so long as he may attend and continue in school or college during the term of said Trust; and (b)—The support and education through college of my great-niece, Susan Arnette, so long as she may attend and continue in college during the term of said Trust; and (c)—The support and education through college of my great-niece, Karolen (Lyn) Wilkinson, so long as she may attend and continue in college during the term of said Trust; and (d)—If, as and when any one or more of said three student beneficiaries shall, during the term of said Trust, obtain·a college degree, he or she shall be paid by said Trustee the sum of $1,000.00 in cash out of the interest or principal of said two-thirds (⅔) of said total Trust Estate, as a graduation present.

The payments of net income which are to be so paid by the Trustee to or for the use and benefit of the respective beneficiaries above named shall be so paid in monthly installments, or in such other periodical installments as the Trustee may determine, and the respective proportionate amounts of the principal payments to be so paid to or for the benefit of my said great-nephew and great-nieces for educational purposes, out of the said

two-thirds (⅔) of the total net income from the entire Trust Estate, shall be left to the discretion of and shall be determined by the Trustee according to the needs of each of said three student beneficiaries, and need not be in equal proportions. Such payments may be made direct to said student beneficiaries, regardless of their minority, or may be made to any other person or persons for any such beneficiary's use and benefit.

If at any time during the term of said Trust the net income from said two-thirds (⅔) of said Trust Estate shall be insufficient to pay the expenses incident to a college education for said last named three beneficiaries, or any of them, then in such event the Trustee shall have the right to pay any excess amount needed for said purposes out of the principal of said two-thirds (⅔) share of said entire net Trust Estate; and in the event their said proportionate share of said net income shall be more than sufficient to pay for their college education as aforesaid, then any such excess amount thereof shall be by the Trustee, from time to time, paid in equal shares thereof to Louise Purvis and Karolen Newton at such times and in such installments as the Trustee may determine.

In the event of the death of my husband, Rexford S. Cozby, before the expiration of the term of said Trust, then his one-third (⅓) of the net income from the entire Trust Estate shall be thenceforth added to and become a part of the proportionate two-thirds (⅔) part of the net income from the Trust Estate which is hereinabove provided for the college education of my said great-nieces and great-nephew above named.

PARAGRAPH NUMBER FOUR.

Upon the final termination of said Trust Estate all of the property then comprising said Trust Estate, and all of the remainder and residue of my property and estate, if any, not hereinabove otherwise disposed of, I hereby give, devise and bequeath to the following named ultimate beneficiaries, in equal shares, an undivided one-half (½) to each, viz: Karolen Newton and Louise Purvis. If either one of said last named beneficiaries be not living at the time of the final termination of the Trust Estate above provided for, then the share of my estate which such deceased beneficiary would be otherwise entitled to receive if living, shall go to and vest in her then living children, in equal shares.

.    .    .    .    .

The will was executed on August 25, 1965. Mrs. Cozby died in December 1967, her husband having predeceased her. All other beneficiaries of the will survived Mrs. Cozby. The Bank administered the trust as provided in the will, making the specified payments to the student beneficiaries and disbursing the excess income to Louise Purvis and Karolen Newton, the nieces of the testatrix. Warren Wilkinson, Jr., the last of the beneficiaries to be entitled to the educational benefits provided for in the trust, graduated from college in 1971 and received the stipulated one thousand dollars as a graduation present.

■ In 1974 the Bank brought this declaratory judgment suit to determine whether the trust had terminated upon the completion of the payments to the student beneficiaries or whether the trust remained in effect until the death of the last to survive of Karolen Newton and Louise Purvis.[1] Named as defendants in the suit were Karolen Newton, Louise Purvis, Warren S. Wilkinson, Jr., Susan Arnette, Karolen (Lyn) Wilkinson Dittmar, Doreen N. Levine, Howard P. Newton, L. Inez Newton, and Alibel M. Pardue. Warren Wilkinson, Jr., Susan Arnette, and Karolen Dittmar, the student beneficiaries of the trust, are the only three children of Louise Purvis.

1. The language of the will is subject to the construction that the trust will terminate only upon the death of the last surviving heir, i. e., "the last survivor," of Karolen Newton and Louise Purvis. However, such a construction has not been advanced by the parties. Furthermore, to so construe the will would violate the rule against perpetuities. *See Henderson v. Moore,* 144 Tex. 398, 190 S.W.2d 800 (1945).

Doreen Levine, Howard P. Newton, and L. Inez Newton are the children of Karolen Newton. Alibel M. Pardue is the testatrix's surviving sister.

Karolen Newton, Louise Purvis, and their children entered into an agreement urging the court to terminate the trust and releasing the Bank from all responsibilities in connection with such termination. After a hearing at which all parties were represented, including the unborn and unadopted children of Karolen Newton and Louise Purvis, the trial court rendered a judgment terminating the trust on the ground that, while the trust estate was sufficient in amount to justify its continuance, its primary purposes had been accomplished and fulfilled and all the beneficiaries except the unborn and unadopted children of Karolen Newton and Louise Purvis had agreed to the termination of the trust. The court ordered the Bank to deliver the funds comprising the trust estate to the ultimate beneficiaries, Karolen Newton and Louise Purvis. The Court of Civil Appeals affirmed the trial court judgment, agreeing that the primary purposes of the trust had been accomplished and that its termination would not subvert the wishes of the testatrix.

The Bank and the guardian ad litem for the unborn and unadopted children of Karolen Newton and Louise Purvis here contend the lower courts erred in decreeing termination of the trust. They argue the language of the will is unambiguous and clearly states that, unless the Bank voluntarily terminates the trust due to insufficient income, the trust is to terminate only upon the death of the last to survive of Karolen Newton and Louise Purvis. Newton and Purvis, they assert, are "ultimate beneficiaries" only in the sense that they would be entitled to the corpus of the trust in the event the Bank terminated it because of insufficient income. Furthermore, according to the Bank and the guardian ad litem, the primary purposes of the trust have not been fulfilled because the provision for the payment of excess income to Karolen Newton and Louise Purvis is not incidental and is a continuing obligation of the Bank as trustee. The beneficiaries argue the two primary purposes of the trust have been accomplished and that therefore termination of the trust as decreed by the lower courts is proper and does not defeat the intent of the testatrix.

■ The beneficiaries of the trust established by the will of Louise Cozby do not contend the will is ambiguous, and the trial court did not so find. Therefore, the true meaning of the will must be determined by construing the language used within the four corners of the instrument. *Republic National Bank of Dallas v. Fredericks,* 155 Tex. 79, 283 S.W.2d 39 (1955). No speculation or conjecture regarding the intent of the testatrix is permissible where, as here, the will is unambiguous, and we must construe the will based on the express language used therein. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885 (1960).

■ Louise Cozby could not have stated more clearly her intention regarding the termination of the Trust. Paragraph Three of the will states:

> The Said Trust . . . shall continue in force and effect during the remainder of the lifetime of the last survivor of the following named three beneficiaries, viz: Rexford S. Cozby; Karolen Newton and Louise Purvis, and shall terminate upon the date of death of the last survivor of said three last named beneficiaries.

The will then provides that the Frost National Bank, as trustee, could terminate the trust if in its opinion the income from the trust property was insufficient to justify the continuation of the trust. The trial court found the income of the trust was sufficient to justify the continued existence of the trust, and that finding is undisputed here. That being the case, it is clear the trust established under the will of Louise Cozby will terminate upon the death of the last to survive of Karolen Newton and Louise Purvis unless circumstances dictate an earlier termination due to insufficient income.

■ The beneficiaries assert that the payment of "excess income" to Karolen

Newton and Louise Purvis is merely an incidental purpose of the trust and that, since the primary purposes of the trust have been accomplished, the trust can be terminated prior to the time specified in the will. *See Alamo National Bank of San Antonio v. Daubert,* 467 S.W.2d 555 (Tex. Civ.App.—Beaumont 1971, writ ref'd n.r.e.); G. Bogert, Trusts and Trustees § 1002 (2d ed. 1962). To accept such a contention would require a determination of what the testatrix considered to be the principal purposes of the trust and what she considered only incidental. Such a determination would take the court beyond the express language of the will into the realm of conjecture and speculation, for it is by no means clear that the provision for excess income distribution was merely an incidental purpose of the testatrix. It is consistent with the estate plan of Louise Cozby to infer that after the death of her husband and the education of the student beneficiaries, the trust was to continue in effect, with periodical payments of excess income to Karolen Newton and Louise Purvis, until the death of the last to survive of Purvis and Newton. In construing an unambiguous will, the cardinal rule is to give effect to the intentions of the testator or testatrix as they are expressed within the four corners of the instrument. *Huffman v. Huffman, supra.* Absent an express declaration of purpose in the instrument, a court cannot go beyond the face of the will to make an ad hoc and speculative assessment of which purposes the trustor or testator considered "primary" and which he considered merely "incidental." Thus the trust established by Louise Cozby in her will cannot be judicially terminated on the ground that its primary purposes have been accomplished where, as in the instant case, the trust expressly provides for its termination upon the happening of specified events. To the extent *Alamo National Bank of San Antonio v. Daubert, supra,* is inconsistent with this opinion, it is disapproved.

The beneficiaries of the trust also argue the trust should be terminated because they have all consented to, and indeed requested, its termination and its continu-

ance is not necessary to carry out a material purpose of the trust. *See* Restatement (Second) of Trusts § 337 (1959); G. Bogert, Trusts and Trustees § 1007 (1962). As noted above, the evidence in this case includes an agreement requesting termination of the trust executed by Karolen Newton, Louise Purvis, and their six children. However, the better rule of law is that beneficiaries of a trust can consent to its termination only where all purposes of the trust have been accomplished. Note, 2 Real Prop. Probate & Trust J. 303, 305 (1967); Annot., 163 A.L.R. 852 (1946). Since one purpose of the trust established by Louise Cozby, the payment of the excess income to Karolen Newton and Louise Purvis, remains unfulfilled, the trust cannot be terminated.

Because of our disposition of Petitioners' points one through five, we do not reach the remaining points of error.

The judgments of the lower courts are reversed and judgment is here rendered that the trust remain in effect until the death of the last to survive of Karolen Newton and Louise Purvis or until the trustee, in its discretion, determines that the income of the trust is insufficient to justify its continuation.

Dissenting Opinion by GREENHILL, C. J., in which DANIEL and JOHNSON, JJ., join.

GREENHILL, Chief Justice, dissenting.

I respectfully dissent.

The terms of Louise Cozby's will clearly indicate her primary purposes in establishing the trust estate were twofold: (1) to provide an income for life for Rexford Cozby in the event he survived the testatrix; and (2) to provide for the education of the three student beneficiaries, Warren Wilkinson, Jr., Susan Arnette and Karolen Wilkinson Dittmar. If Rexford Cozby died before the expiration of the term of the trust, as indeed he did, the proportion of the trust principal reserved for his use was to be aggregated with the proportionate share reserved for the students and the income gen-

erated thereby was to be used to defray their college expenses. If the income from the trust property was insufficient to pay the expenses of the student beneficiaries, the trustee was authorized to invade the trust principal in order to provide the funds necessary to cover the expenses. If, on the other hand, the income from the trust property exceeded that necessary to pay the educational expenses of the three designated beneficiaries, the trustee was authorized to distribute such excess to Louise Purvis and Karolen Newton in equal shares.

The first purpose of Louise Cozby in establishing the trust, the provision of income for her husband, was rendered impossible of performance by his death prior to the death of the testatrix. The second purpose, the provision of educational benefits for the great-nieces and great-nephew of Louise Cozby, was accomplished with the 1971 graduation from college of Warren S. Wilkinson, Jr. In support of its judgment terminating the trust the trial court found the purposes of the trust had been accomplished. The Court of Civil Appeals concurred in this finding, specifying that at best the provision for the payment of excess income to Louise Purvis and Karolen Newton was an incidental or minor purpose of the trust.

The structure and terms of the will support these findings. The language of Paragraph Three directs the trustee to pay "to or for the use and benefit of the following named respective beneficiaries the following periodical payments. . . ." The remainder of the sentence specifies the nature of the payments to be made to Rexford Cozby and to the student beneficiaries. It says nothing of the possible payments to Karolen Newton and Louise Purvis and does not, in this section of the will, refer to them as beneficiaries of the trust.

The succeeding paragraph directs the bank to make the payments to the beneficiaries "in monthly installments, or in such other periodical installments as the Trustee may determine." Again, there is no mention of the contingent payments to Purvis and Newton.

The next paragraph provides the only mention of the payments, and dictates that if the income is more than sufficient to cover the educational expenses, then and only then is the bank authorized to distribute the excess to Louise Purvis and Karolen Newton "from time to time, . . . at such times and in such installments as the Trustee may determine." The will mandates that any such excess income payments "shall" be made by the bank, but the frequency and amount of such payments are left to the discretion of the trustee. It is clear from these provisions that the testatrix did not intend to provide continuing, regular payments for Louise Purvis and Karolen Newton during the term of the trust, and that any benefits due them were an incidental and minor purpose of the trust.

There is no evidence or term of the will suggesting that this trust was in the nature of a spendthrift trust. It therefore occurs to me the better rule would be that where a trust is not a spendthrift trust, and the material purposes of the trustor have been accomplished, an agreement by all beneficiaries to terminate the trust should be given effect, provided none of the beneficiaries is under an incapacity. Restatement (Second) of Trusts § 337 (1959), G. Bogert, Trusts and Trustees § 1007 (2d ed. 1962); Annot., 163 A.L.R. 852 (1946). *See Tinsley v. Magnolia Park Co.,* 59 S.W. 629 (Tex.Civ.App. 1900, writ ref'd). Here all beneficiaries of the trust, Karolen Newton, Louise Purvis and their children, have entered into an agreement requesting judicial termination of the trust; the will does not create a spendthrift trust; and, as detailed above, the provision for the payment of excess income to Newton and Purvis was merely an incidental purpose of the trustor, Louise Cozby.

The bank and the guardian ad litem for the unborn and unadopted children of Karolen Newton and Louise Purvis would deny effect to the agreement to terminate the trust on the ground that the beneficiaries of the trust corpus cannot be finally determined until the death of the last to survive

of Karolen Newton and Louise Purvis. Thus, they argue, there are contingent remaindermen whose interests are unprotected in case of termination. Under the terms of the will here in question, if either or both Karolen Newton and Louise Purvis die prior to termination of the trust, the share of the estate due each is to be distributed in equal shares to "her then living children." The Petitioners argue that these contingent beneficiaries are unknown because Karolen Newton and Louise Purvis are presumed able to bear additional children. Furthermore, argue the Petitioners, either Newton or Purvis could adopt additional children.

The argument that Karolen Newton and Louise Purvis might adopt additional children and thereby expand the class of residuary beneficiaries is precluded by the decision of this Court in *Cutrer v. Cutrer,* 162 Tex. 166, 345 S.W.2d 513 (1961). We there held that where a trust provided for the distribution of assets to the "children" of a designated beneficiary, the appellation "children" did not include adopted children. Therefore, even if Karolen Newton or Louise Purvis did adopt additional children, the class of "then living children" mentioned in the will of Louise Cozby would not be affected.

Regarding the possibility that Karolen Newton and Louise Purvis could bear additional children, the question is somewhat more problematical. The undisputed testimony at the trial indicated that both nieces of the testatrix had passed menopause and therefore were physically incapable of childbearing. Nevertheless, Texas courts have heretofore followed the old common-law doctrine, sometimes called the "fertile octogenarian rule," that a person is conclusively presumed to be able to have issue as long as he or she is alive. *Aberg v. First National Bank in Dallas,* 540 S.W.2d 403 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r. e.); *Donald v. Troxwell,* 346 S.W.2d 398 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.). The trend seems to be toward relaxing the doctrine so as to allow rebuttal of the presumption. *See, e. g., In Re Bassett's Estate,* 104 N.H. 504, 190 A.2d 415 (1963); Restatement of Property § 274

(1940); Annot., 98 A.L.R.2d 1285 (1964). The better view is that adopted by the Restatement of Property, cited just above, which recognizes the presumption of fertility but recognizes that "this presumption can be rebutted by relevant evidence as to such person and by past experience concerning births to persons of like age and physical condition."

In the instant case, the evidence bearing upon the issue of the fertility of Karolen Newton and Louise Purvis is their own testimony. The testimony is undisputed and supports the trial court finding that they are incapable of bearing children. That being true, I would hold that the presumption of fertility was rebutted and that all requisite beneficiaries joined in requesting termination of the trust.

The bank and the guardian ad litem also assert that the legal heirs of Louise Cozby were necessary parties to this lawsuit because if, when the trust terminated, neither Louise Purvis, Karolen Newton, nor any of their children were living, then the legal heirs of Louise Cozby would inherit the property comprising the trust corpus. As these legal heirs were contingent beneficiaries of the trust, the bank and the guardian ad litem contend they were necessary and indispensable parties to this suit to terminate the trust. The trial court ordered the joinder of Alibel Pardue, the sister of the testatrix; and so the contingent remaindermen not parties to the suit were the descendants of Alibel Pardue. These remote contingent beneficiaries were not necessary parties to this suit. The interest of these contingent beneficiaries could vest only if the trust remained in effect until the death of the last to survive of Karolen Newton and Louise Purvis. The arguments advanced by the bank as trustee sought the continuation of the trust until such time as it terminated by the express language of the will, that time being the death of the last to survive of Karolen Newton and Louise Purvis. Thus the interests of the bank as trustee and the interests of the remote contingent beneficiaries were identical. In such a case, the contingent benefi-

ciaries are considered to be adequately represented by the trustee; and while the remote beneficiaries would be proper parties, they are not indispensable. *Mason v. Mason*, 366 S.W.2d 552 (Tex.1963); *Fisher v. Southland Royalty Company*, 270 S.W.2d 677 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.).

I would affirm the judgments of the trial court and the Court of Civil Appeals.

DANIEL and JOHNSON, JJ., join in this Dissent.